IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-02593-WYD-KLM

EDWARD SIMMONS,

     Plaintiff,

v.

JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,

     Defendant.

---

**ORDER**

---

     THIS MATTER is before the Court on Defendant's Motion for Summary
Judgment filed December 7, 2009.  A response was filed on January 5, 2010, and a
reply was filed on January 22, 2010.  For the reasons stated below, Defendant's Motion
for Summary Judgment is granted.

I.     FACTUAL BACKGROUND

     A.     Standard of Review

     At the outset, I note that where appropriate, I have construed the facts in the light
most favorable to Plaintiff as I must for purposes of this summary judgment motion.
*See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).  Many of
the facts are, however, undisputed.

     Further, as to many of the facts asserted by Defendant in its Statement of Facts
and substantiated by record evidence, Plaintiff's attempt to create disputed issues of
material fact through denying the facts was not accompanied by any evidence which

supported the denials. This includes Plaintiff's responses to paragraphs 7, 8, 15, 16, 17, 18, 20, 22, 23, 24, 25, 27, 28, 32, 36, 40, and 61 of Defendant's Statement of Material Facts. Further, Plaintiff denied some facts on the basis that they were "immaterial" or "legal conclusions", again without citing to any evidence to refute the evidence cited by Defendant. This includes Plaintiff's responses to paragraphs 7, 17, 18, 25, 39, 44, 45, 48 and 67 of Defendant's Statement of Material Facts. I deem these facts undisputed for purposes of summary judgment, whether they are material or not. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986) (party opposing summary judgment "may not rest upon mere allegations or denials of pleadings, but must set forth specific facts showing that there is a genuine issue for trial); *see also* Section III.B.4 of my Practice Standards (if the party opposing the motion for summary judgment denies any facts set forth by the movant, the "denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial".).

Plaintiff also responds to some of Defendant's Statement of Material Facts by citing additional facts without citation to any evidence in support thereof. This includes Plaintiff's Response to paragraphs 3, 7, 8, 9-13, 15, 16, 22, 25, 28, 32, 36, and 40 of Defendant's Statement of Material Facts. These facts are disregarded as unsupported and conclusory.

Finally, Plaintiff disputes some of Defendant's asserted facts which rely on testimony of Plaintiff's supervisor Linda Woods ["Woods"] on the basis that she is not credible and that any statements made by her in support of Defendant's motion are

disputed due to her reputation as being untruthful. (Pl. Edward Simmons' Resp. to Def.'s Mot. for Summ. J. [Pl.'s Resp."], Resp. to Mov.'s Material Facts, ¶¶ 15, 16, 22, 23, and 28.) In support of this, Plaintiff cites to the deposition of a co-worker Paula Harmon ["Harmon"] who testified that Woods' reputation for being truthful was not very good. (*Id.*, Ex. 1 at 13-14.) Plaintiff also disputes the credibility of Marvin Green ["Green"]. (*Id.*, ¶ 22.)

However, such conclusory attacks on credibility are not sufficient to defeat summary judgment. *See National Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004) ("[s]tanding alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion"); *Rowe v. Albertson's, Inc.*, No. 05-4113, 2006 WL 1484918, at *2 (10th Cir. 2006) ("conclusory charges that [witnesses] are not credible . . . is insufficient to satisfy [plaintiff's] burden of persuasion or to defeat summary judgment"). Thus, in evaluating Defendant's Motion for Summary Judgment, I may not determine whether I believe Defendant's evidence; rather, [I] must determine whether the nonmovant offered any specific facts that demonstrate the existence of a material fact to be tried." *National Am. Ins.*, 358 F.3d at 742-43.

B.    Facts

Plaintiff, an employee of the United States Postal Service ["USPS"], brought this action which alleges discrimination based on disability and a hostile work environment in violation of the Rehabilitation Act of the Civil Rights Act of 1964. Plaintiff seeks

economic and non-economic damages, including compensatory damages, pre- and post-judgment interest, and attorneys' fees and costs.

The Complaint alleges that Plaintiff was discriminated against because of his disabilities, and that he was harassed to an extent that constituted a hostile work environment based on disability. As to the disability claim, Plaintiff claims that he is disabled because of a brain tumor and posttraumatic stress disorder ["PTSD"]. Plaintiff alleges that he was given leave without pay for absences for which he requested sick leave or leave under the Family Medical Leave Act ["FMLA"], that he was refused pay adjustments, training, and career advancement and professional development opportunities, that he was harassed and belittled, and that his attempts to transfer and requests for accommodation were denied.

During the times relevant to the complaint, Plaintiff was assigned to and worked at the Englewood Carrier Annex as a Supervisor, Customer Services. Woods, the Station Manager at the Englewood Carrier Annex, was Plaintiff's direct supervisor. Plaintiff's last day of work at that facility was October 19, 2007.

Prior to bringing this action in federal court, Plaintiff filed an informal complaint with the agency by contacting an Agency EEO Counselor on January 30, 2008. The informal complaint was not resolved to his satisfaction, and, on May 12, 2008, Plaintiff filed a formal complaint. Defendant contends that the time-frame relevant to Plaintiff's claims in his informal and formal complaint, and thus in this case, is December of 2007. While Plaintiff denies this, he has cited no record evidence to support his denial or to

counter the evidence cited by Defendant. He also argues, without any evidence, that the time period was tolled. I address that argument on its merits in Section II.B.2, *infra*.

According to the evidence, prior to 2008 Plaintiff had not actually been diagnosed with PTSD and Plaintiff did not miss work due to PTSD. Plaintiff did not inform his supervisor Woods that he had PTSD, a brain tumor, or any other disability. The evidence supports Defendant's assertion that Woods was unaware that Plaintiff had a brain tumor until after Plaintiff stopped working at the Englewood Carrier Annex, and was unaware that Plaintiff was having any medical problems during the time that he worked at the Englewood MPC. Plaintiff did not request any accommodation for his PTSD, brain tumor, or any other disability from Woods.

Further, Defendant asserts and has presented evidence that Woods did not discriminate against Plaintiff and did not undertake any actions against him because he had a brain tumor or any other disability. Plaintiff has not presented any evidence to counter the above statements. The statement that Woods did not discriminate against Plaintiff is, however, a legal conclusion which the Court must address.

Plaintiff admits that on some occasions, he had to work on one of his days off because the Englewood Carrier Annex was short staffed. On one occasion, on Friday, October 19, 2007, Plaintiff was told that he needed to work on his day off (that coming Monday) even though he had a doctor's appointment. The reason that he had to work on that date according to Defendant was because Mondays were Harmon's (the a.m. supervisor) day off and Plaintiff had given the other employee (Janie Sieber) who could cover the supervisor position the day off. Thus, if Plaintiff did not work, Woods would

have been required to work at least a 12 hour day, covering both the a.m. and p.m. supervisors' duties. Further, it does not appear that Plaintiff checked with Woods to see if he could cover both the a.m. and p.m. shifts.

Plaintiff asserts that he was first told by Woods that he had to work his day off when she was walking out the door at the close of business on Friday. He did not then tell her that he had a doctor's appointment. Instead, Plaintiff called Green, her supervisor, who was the Postmaster, and they (Plaintiff, Woods, and Green) had a discussion about the issue. He told Green during the discussion that he had a doctor's appointment on that coming Monday, October 22, 2007 (an MRI) and could not reschedule the appointment. I note, however, that Plaintiff's medical records show that he did not have a MRI on October 22, 2007, the day he told Green it was scheduled, but on October 25, 2007.

Plaintiff admits that Green attempted to find someone else to cover for him but was unable to do so, and that he thus informed Plaintiff that he needed to work on that Monday, October 22, 2007. Defendant asserts that Plaintiff was not required to work on October 22, 2007, because of his disability or for any reason other than the fact that Harmon's scheduled day off was Monday and Plaintiff had approved the leave for Janie Sieber ["Sieber"]. Plaintiff also testified that it was part of his job as supervisor to work days off when needed, and that he made a lot of money from working those days off.

Plaintiff did not report to work on October 20, 2007 (a Saturday that he was scheduled to work) or Monday, October 22, 2007, and did not work at the USPS again until sometime in April or May 2008. At that time, he was reassigned to another

location, as he had requested. During the time that Plaintiff was off, he requested and received leave under the FMLA, as discussed in more detail below.

Defendant asserts that Plaintiff's physicians ordered that he could not return to work on multiple occasions during the time period that he was on leave, citing to the physicians' medical records. Plaintiff disputes this based only on the fact that the records were not properly authenticated pursuant to Fed. R. Evid. 901; however, he provides no evidence to support his challenge to the admissibility of his medical records and the documents were ultimately authenticated by the Declaration attached to Defendant's Reply as Exhibit A-13. Thus, I deem this fact admitted.

With respect to Plaintiff's extended absence that started on October 19, 2007, Plaintiff did not provide documentation to support this leave until mid-November 2007. Specifically, on November 15, 2007, the USPS received a "Certification of Health Care Provider" from John Draper, M.D., a family practice doctor, to support Plaintiff's request for a block of FMLA leave. The Certification stated that the dates of Plaintiff's condition were from October 22, 2007, through November 15, 2007, and the reasons for the certification were "headaches, blurred vision, syncope, pituitary macro adenoma, hypothyroidism, decreased testosterone, pan hypopituitarism, sleep apnea, depression/anxiety." (Def.'s Mot. for Summ. J. ["Def.'s Mot."], Ex. A-8 & Attach. 1 thereto). On the same day that the FMLA Coordinator received that documentation, Plaintiff''s FMLA leave was approved. Woods did not have any involvement in the processing or approval of FMLA leave; all such requests are handled by FMLA coordinators.

On December 28, 2007, USPS received a "Certification of Health Care Provider" from John Draper, M.D., a family practice doctor, to support Mr. Simmons' request for a block of FMLA leave.  The certification stated that the dates of Plaintiff's disability were from December 19, 2007, through January 19, 2008.  The reason Dr. Draper provided for the certification was "dibilitating [sic] anxiety/depression - causing lack of focus, lack of ambition, chest pain, SOB [shortness of breath], insomnia."  (Def.'s Mot, Ex. A-8 & Attach. 3 thereto.)   On the same day that the FMLA Coordinator received that documentation, Plaintiff's FMLA leave was approved.

The USPS received an updated Certification from Dr. Draper on January 25, 2008.  The reason Dr. Draper provided for the certification was Plaintiff's "post traumatic stress disorder causing extreme anxiety, depression and anger, chest pain, SOB [shortness of breath], insomnia, lack of focus – precludes work" and he noted that Mr. Simmons was "presently incapacitated."  (Def.'s Mot., Ex. A-8 & Attach. 5 thereto.)  The USPS also received a note from Dr. Burke, Plaintiff's psychiatrist, indicating that Plaintiff may return to work on February 11, 2008.  On January 28, 2008, the following work day, the FMLA leave approval for Plaintiff was extended until February 11, 2008.

Plaintiff admits that he did not provide any documentation to support an extension of this leave past February 11, 2008; therefore, on March 4, 2008, the FMLA Coordinator sent another notice to Plaintiff requesting updated information to support his block of time leave, but Plaintiff did not provide any information in response.  On March 20, 2008, the FMLA Coordinator sent another notice to Plaintiff requesting updated information, but Plaintiff did not provide any information in response.  On April

2, 2008, the FMLA Coordinator sent yet another notice to Plaintiff about the missing information and informing Plaintiff that his FMLA request had been denied, and Plaintiff did not provide any information in response.

On February 5, 2008, the Postal Service received a certification from Dr. Rees-Jones, an endrocrinologist. Defendant asserts that because this certification related to periodic absences, rather than the block leave, it was given a different FMLA number (3538898). On February 7, 2008, after reviewing that certification, the FMLA Coordinator requested additional information from Plaintiff, but he did not provide any information in response. Beginning February 12, 2008, Plaintiff's absence was not approved as FMLA "block of time" leave, and Plaintiff also never sent supporting documentation for his requested periodic leave FMLA number (3538898). Routine medical appointments are not covered by FMLA. Nonetheless, Plaintiff was paid by the USPS for all of the leave he took from October 2007 through April 2008, with the exception of 72 hours when he had run out of available paid sick and annual leave. Defendant provides more detail on this issue in its Statement of Material Facts.

In Plaintiff's Statement of Additional Facts in his response brief, he asserts that "[a]s a general practice in the Englewood Post Office during the time that Mr. Simmons was employed there, employees who were injured or were considered to be injured, or who were black, including [nine named employees], were subjected to unfair criticism, verbal abuse, threats regarding their job security, threats of discipline, actual discipline, and increased scrutiny by Ms. Woods." (Pl.'s Resp., Statement of Additional Facts, ¶ 1.) Defendant denies this, pointing out that this statement is not supported by cited

discovery responses, that the statement provides no facts regarding the alleged actions by Woods, and that there are no claims of race or color discrimination in this lawsuit.

Plaintiff further asserts that "Janie Seiber and Paula Harmon, both white females, were treated more favorably than Mr. Simmons in being given opportunities for training and advancement, and in terms of the amount and nature of harassment that each of us received from Ms. Woods." (*Id.*, ¶ 5.) While Defendant admits that Seiber and Harmon are white females, it denies the remainder of this paragraph. Defendant asserts that the cited discovery responses by Plaintiff are conclusory and not a statement of fact.

Plaintiff also states that he suffered from headaches, blurred vision, syncope, pituitary macro adenoma, hypothyroidism, decreased testosterone, pan hypo-pituitarism, sleep apnea, depression and anxiety and was certified as incapacitated from October 22, 2007 through November 15, 2007. In response, Defendant points out that Plaintiff's physician stated that he was "incapacitated" as defined under the FMLA due to "anxiety/depression," for "2-5 days monthly" from October 22, 2007 until November 15, 2007, only. (Def.'s Mot., Ex. A-8, Attach. 1, at 1, ¶ 5.b.) The term "incapacity" for purpose of the FMLA was defined as "inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." (*Id.* at n. 2.)

Finally, Plaintiff asserts that he suffered from debilitating anxiety/depression causing lack of focus, lack of ambition, chest pain, insomnia, and shortness of breath from December 19, 2007 through January 19, 2008, and was diagnosed as being disabled and totally incapacitated for the period beginning early October 2007 through

January 19, 2008.  Defendant admits that Plaintiff's physician Dr. Draper wrote that

Plaintiff suffered from "debilitating anxiety/depression - causing lack of focus, lack of

ambition, chest pain, SOB [shortness of breath], insomnia" and that his condition

"progressed to disability 12/19/07 through Jan 19."  (Def.'s Mot., Ex. A-8 and Attach. 3.)

Defendant denies the remainder of these allegations, stating that the cited discovery

responses do not support the statement that Plaintiff was "totally incapacitated."

II.     ANALYSIS

A.     Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and the ... moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden of showing that no

genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v.*

*Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

In reviewing a summary judgment motion, the court must view the evidence in

the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care*

*Sys., Inc.*, 195 F.3d 584 (10th Cir. 1999).  All doubts must be resolved in favor of the

existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891,

892 (10th Cir. 1991).

B.     Analysis of the Merits of Defendant's Arguments

I find as set forth below that summary judgment in favor of Defendant is

appropriate in this case on a number of bases.

1. <u>Failure to Exhaust Administrative Remedies</u>

First, I find that Plaintiff's claims are barred for failure to exhaust administrative remedies. Federal employees must exhaust administrative remedies prior to bringing a suit for employment discrimination. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996). The exhaustion of a employment discrimination claim begins with the plaintiff contacting an EEO counselor. 29 C.F.R. §1614.105(a). The complainant "must initiate contact with a Counselor within 45 days of the date of the matter alleged to have been discriminatory." *Id.*, § 1614.105(a)(1). If the complainant fails to meet this deadline, the agency must dismiss the complaint. *Id.*, § 1614.107(a)(2). This 45-day time limit has been strictly enforced by the courts. *See, e.g., Carter v. Greenspan*, 304 F. Supp. 2d 13, 22-24 (D.D.C. 2004) (dismissing case where plaintiff missed the 45-day deadline by four days).

Further, the time limit to contact the EEO is required within 45 days of each "discrete" discriminatory act. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003). A hostile work environment claim does not have to be exhausted, however, as to a single act of harassment since such a claim relates to the "cumulative effect of individual acts." *Morgan*, 536 U.S. at 115. Claims based on actions that are not raised during the administrative phase are barred even if they relate to timely claims. *Id.* at 113.

In this case, it is undisputed that Plaintiff failed to contact an EEO counselor "within 45 days of the date of the matter alleged to have been discriminatory," 29 C.F.R. §1614.105(d), regarding any of his working conditions at the Englewood facility,

including the hostile work environment. Indeed, it is undisputed that Plaintiff first contacted an EEO Counselor on January 30, 2008. Accordingly, any claims based on alleged discriminatory actions occurring prior to December 15, 2007 are barred. Since Plaintiff did not work at the Englewood Carrier Annex after October 19, 2007, I agree with Defendant that claims based on the working conditions there, including his hostile work environment, are barred.

Further, in his formal and informal complaints to the EEO Plaintiff referred to discriminatory acts occurring in December 2007 only. (Def.'s Mot., Exs. A-2 and A-3.) Plaintiff did not refer to any actions occurring prior to that time. Because each discrete act of discrimination must be separately exhausted, Plaintiff has not exhausted any claims other than those arising out of conduct occurring in December 2007. From this the only claims that could conceivable survive since he was no longer working at the facility at that time are Plaintiff's claims regarding his pay and how his leave was calculated. However, those claims fail for reasons set forth in the subsequent sections of my analysis.[1]

Plaintiff claims, however, that there is a question of fact as to whether the 45-day deadline should be tolled based on mental incompetency. The Tenth Circuit has noted that the timeliness requirements of Title VII are akin to statues of limitations, and thus subject to the doctrines of waiver, tolling, and estoppel. *Million v. Frank*, 47 F.3d 385,

---

[1] I also note that neither Plaintiff's informal request for counseling nor formal complaint mentions his PTSD. (*Id.*) This provides yet another basis to bar Plaintiff's claims based on that disability.

389 (10th Cir. 1995). I agree with Defendant, however, that the deadlines should not be tolled in this case.

That is because "[c]ourts have narrowly construed equitable exceptions to the time limitations set out in Title VII." *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996). Indeed, the Tenth Circuit has never held that mental incapacity tolls the statute of limitations." *Id.* at 1268. In *Biester*, the court noted that "[t]he few courts which have recognized an exception for mental incapacity had limited the application of this equitable doctrine to exceptional circumstances," such as if a plaintiff was "adjudged incompetent or institutionalized." *Id.*; *see also Castaldo v. Denver Pub. Schools*, No. 07-1404, 2008 WL 1944931, at *2 (10th Cir. May 5, 2008) (declining to apply tolling where plaintiff "had not alleged that he had been adjudicated incompetent or institutionalized, nor had he shown that he was incapable to pursue his claim despite his incapacity, conditions that we suggested [in *Biester*] might permit equitable tolling").

Here, even if mental incapacity were a basis for tolling, no exceptional circumstances exist. Plaintiff has not alleged or shown that he was adjudicated incompetent by a court or that he was institutionalized. Further, he has presented no evidence to show that he was incapacitated to the extent that he was unable to pursue his legal rights. He relies solely on his physicians' submissions for his FMLA leave; however, they only support the fact that he was unable to work, not that he was incapable of pursuing his legal rights. Moreover, there is nothing in those records to support a finding of incapacity prior to October 22, 2007, or from November 25 to

December 19, 2007, when his doctor simply indicated he was disabled (Def.'s Mot., Ex. A-8, Attach. 5 at 1), and the disability from October 22 to November 25, 2007, is described as only lasting "2-5 days per month."  (*Id.*, Attach. 3 at 1.)

Also, Defendant has presented evidence that in late 2007, Plaintiff was able to attend medical appointments, speak to his medical providers, complete FMLA documentation, and retain an attorney.  (Def.'s Reply in Supp. of Mot. for Summ. J. at 12-13, ¶ 3.)  The Tenth Circuit has indicated that, even if it were to recognize the doctrine for mental incapacity, its application would not be warranted in these circumstances.  *See, e.g.*, *Biester*, 77 F.3d at 1267 (no tolling where plaintiff was able to write to EEOC and communicate with attorney); *Castado*, 2008 WL 1944931, at *2 (no tolling where plaintiff was able to contact attorney and file belated charge during incapacity).  Accordingly, I find that Plaintiff has not shown that an incapacity prevented him from contacting an EEO counselor such that the 45-day time frame for contacting an EEO counselor should be tolled.

> 2.  Failure to Establish a Claim of Disability Discrimination/Disparate Treatment

I also find that summary judgment is appropriate on Plaintiff's disability discrimination claim on the merits.

> a.  Plaintiff Has Not Shown an Adverse Action

First, I agree with Defendant that Plaintiff has not shown that he was subjected to an adverse employment action, as required to maintain a claim of discrimination.  *See Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 531 (10th Cir. 1998).  In order to

constitute an adverse employment action, a plaintiff must show that he suffered some alteration of the terms and conditions of his employment status such as not being hired, being fired, being denied a promotion, or other action causing a significant change in benefits or responsibilities. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

What constitutes an adverse employment action is determined on a case-by-case basis, but "a mere inconvenience or alteration of job responsibilities will not be considered to be adverse." *Sanchez*, 164 F.3d at 532. The action must have some significant impact on the terms and conditions of employment. *See, e.g., Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (lower than expected evaluation insufficient to show adverse action).

In this case, Plaintiff argues that he was denied training and opportunities for career advancement. However, I agree with Defendant that his general and unsubstantiated claims are not sufficient to defeat summary judgment. The undisputed facts show that Plaintiff was not actually denied any training. Instead, he admits that he was provided training which he contends was inadequate in a single aspect—that Woods failed to give him a flow chart information for the a.m. duties at the Station. I find that this is not sufficient to show a significant change in employment status, particularly since it is admitted that after this training, Plaintiff did not cover the a.m. supervisor position.[2]

---

[2]  Plaintiff claims this is because he "pressed the issue" with Woods and that "she didn't want to" use him in that position. Defendant asserts, however, that he never discussed this issue with Woods.

The claims that Woods yelled at Plaintiff do not meet this burden either.  *See*

*Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (claims by plaintiff that

supervisor yelled at her, told her she was a poor manager, gave her poor evaluations,

and chastised her in front of customers did not state an "adverse employment action");

*Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 243 (4th Cir. 1997) (concluding,

as a matter of law, that manager's acts of yelling at plaintiff and telling other employees

to ignore and to spy on plaintiff did not constitute adverse employment actions).  In

short, Plaintiff has presented no facts to show "a significant change in employment

status, such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits."  *Ellerth*, 524 U.S.

at 761.

With respect to pay and leave issues, Plaintiff asserts that Defendant

discriminated against him by not paying him for all the time he was on medical leave.  It

is undisputed that during Plaintiff's absence from work, he was initially charged for some

leave without pay ["LWOP"] during the time that his FMLA medical documentation was

not complete.  However, it is also undisputed that Plaintiff was ultimately paid for all of

the leave he took during his six-month absence, other than 72 hours when he ran out of

available paid leave and was given LWOP.  (Def.'s Mot., Statement of Material Facts,

¶¶ 49-50.)  Further, as to the delay of his payment, I agree with Defendant that the

undisputed facts show that Plaintiff's pay was delayed only briefly.  While payment for

eight hours was delayed for less than four months and another 48 hours for three-and-

a-half months (*Id.* at 9 ¶ 50), the other pay delays were only a pay period or two.  (*Id.*,

¶¶ 49-59.)  Brief delays in pay are not "adverse employment actions."  *See Coefield v.*

*GPU,* No. 04-2081, 2005 WL 567815, at  (3rd Cir. Mar. 11, 2005) (delay in promotion,

where retroactive pay is given, is not an adverse employment action, citing cases);

*Herron v. DaimlerChrysler*, 388 F.3d 293, 301 (7th Cir. 2004) (two-month delay in

paying overtime is not an adverse employment action).

Moreover, the reason for the delay in pay appears to be Plaintiff's failure to

submit appropriate documentation for FMLA leave.  As soon as that medical

documentation was completed, his FMLA leave was approved.  (Def.'s Mot., Statement

of Material Facts ¶¶ 32, 36, 40.)  Plaintiff has presented no evidence to support an

inference that the reason for the delay was because of discrimination based on his

disability.

Plaintiff also confuses damages with an "adverse employment action."  He

argues that because he has alleged damages, he has shown an adverse employment

action.  For example, he claims he lost his house because he was unable to make

payments on it due to delays in his pay and that this is an adverse employment action.

Even if this is a compensable injury in an employment case, it is not an adverse

employment action.  Plaintiff's housing is not part of his employment and the USPS did

not take away his house.

    b.  <u>Plaintiff Has Neither Established a Prima Facie Claim Of
Disability Discrimination Nor Shown Pretext</u>

Under the Rehabilitation Act of 1973, a claim for disparate treatment is analyzed

like one under Title VII, under the *McDonnell Douglas* framework.  *See Cummings v.*

*Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005). "The Rehabilitation Act expressly incorporates and adopts the employment discrimination standards contained in Title I of the Americans with Disabilities Act ["ADA"], . . . [t]hus, 'decisions under both Acts apply interchangeably to [the court's] analysis." *Detterline v. Salazar*, No. 07-1443, 2009 WL 929092, at *3 (10th Cir. April 7, 2009).

To establish a case of disability discrimination where, as here, there is no direct evidence of discrimination, the plaintiff must first make out a prima facie case of discrimination. *Cummings*, 393 F.3d at 1189. If the plaintiff meets his prima facie case, the burden shifts to the defendant to articulate a nondiscriminatory reason for its conduct. *Id.* If the defendant meets that burden, the burden of production then shifts to the plaintiff to present evidence to show that the defendant's stated reason is pretextual. *Id.*; *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

To establish a prima facie case of discrimination, a plaintiff must show that: (1) he is disabled as defined by the Act; (2) he was otherwise qualified for the job regardless of the disability; and (3) his employer discriminated against him based on his disability. *Cummings*, 393 F.3d at 1189; *see also Rakity v. Dillon Cos., Inc.*, 302 F.3d 1152, 1164 (10th Cir. 2002) (discussing elements of prima facie case of discrimination under the ADA). In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to 'raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." *Rakity*, 302

F.3d at 1164 (quotation omitted).  I find for the reasons set forth below that Plaintiff has not established a prima facie case of disability discrimination.

With respect to the first element of a prima facie case, the Rehabilitation Act defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).  I find that Plaintiff has not shown he was "disabled" as defined by the Act.  Plaintiff alleges that he suffers from two disabilities, a benign brain tumor and PTSD.  However, he admitted in his deposition that he was not diagnosed with PTSD until 2008, *i.e.*, after the alleged discriminatory acts.  Further, there is no evidence that Plaintiff had a brain tumor during the applicable time period he was employed at the Englewood Annex, or that the brain tumor or any other disability substantially limited one or more of Plaintiff's major life activities in that period.

I also note that there is no evidence that Plaintiff informed anyone at the Postal Service that he had PTSD or a brain tumor prior to the alleged discrimination in 2007 or that the USPS perceived or regarded Plaintiff as disabled during that time period.  An employer cannot discriminate against an employee on their disability if they did not even know of the disability.  *See, e.g.*, *Roberts v. Cessna Aircraft Co.*, No. 07-3133, 2008 WL 3524009, at *3 (10th Cir. Aug. 14, 2008) (no discriminatory intent when evidence showed that employer was not aware of disability and therefore did not consider the disability in connection with employment placement).

Plaintiff has also failed to address the argument that his claims essentially boil down to an inability to work with his supervisor Woods. Courts have held that an employee's inability to work with a particular supervisor or at a particular station is not an impairment that substantially limits a major life activity. *See Weiler v. Household Finance Corp.*, 101 F.3d 519, 524-25 (7th Cir. 1996) (problem working with supervisor is not a disability under the ADA as "[t]he major life activity of working is not 'substantially limited' if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance"). As the Tenth Circuit has held on this issue:

> MacKenzie's entire disability claim focuses on the actions of her supervisor Gourley. However, the major life activity of working cannot be "substantially impaired" if a plaintiff cannot work under a certain supervisor because of the stress and anxiety it causes.

*MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1276 (10th Cir. 2005) (citing *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1176 (10th Cir. 1997)).

Plaintiff also cannot show that he was "otherwise qualified", the second element of a prima facie case. To meet this element, Plaintiff must be "otherwise qualified" (with or without reasonable accommodation) to perform the functions of the job. *Wilkerson*, 606 F.3d at 1263; *Woodman v. Runyon*, 132 F.3d 1330, 1338-39 (10th Cir. 1997). Here, the undisputed facts show that Plaintiff was on paid leave from October 16, 2007, through April 2008, and was unable to work during that time. Because Plaintiff was not available to perform the essential functions of his job during that time frame, he was not a qualified individual.

Third, Plaintiff cannot show that the USPS discriminated against him because of his disability. His supervisor Woods–who is the only alleged discriminating official–had no involvement in the approval of his FMLA leave requests. Also, Plaintiff has cited no evidence to dispute the fact that she did not discriminate against him and did not undertake any actions against him because he had a brain tumor, PTSD, or any other disability. There is also no evidence to show that Woods or anyone else at the USPS knew of Plaintiff's alleged disability, beyond mere conjecture on the part of Plaintiff, *i.e*, that she should have known from the fact that Plaintiff had a MRI scheduled that he was disabled and was requesting an accommodation. Finally, Plaintiff admitted that the reasons Woods undertook certain acts were not discriminatory. (Pl.'s Resp. to Def.'s Statement of Material Facts, ¶ 63 (Woods yelled and screamed at him "[b]ecause she could and the Postmaster was on her back all the time"), ¶ 68 (Wood didn't use him for the a.m. supervisor because he "pressed the issue" and "she didn't want to" use him).)

Plaintiff has also presented no evidence of "disparate treatment". He makes an unsupported claim that two "white females" were treated differently than he was. However, he has no evidence, and has not even alleged facts to show, that they were similarly situated to him or that they did not have a disability. *See Hysten v. Burlington Northern and Santa Fe Railway Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) ( the plaintiff ordinarily satisfies the third factor of the prima facie test by "proof that the employer treated similarly situated employees more favorably.").

I also find that the USPS has offered legitimate, non-discriminatory reasons for the actions it took with respect to Plaintiff's employment. Plaintiff fails to address this

issue in his response.  Instead, he states that issues as to why he had to work on October 22, 2007, are immaterial.  These issues are, however, central to his claims because this is a specific instance he has identified where he was allegedly discriminated against because of a disability.  The undisputed facts show that he was ordered to work because there was no other coverage for his shift and because he had approved another employee's time off.  (Def.'s Mot., Statement of Material Facts §§ 13, 16.)  In the face of these non-discriminatory reasons, Plaintiff has the burden of identifying evidence to show pretext.  He has presented no evidence to support an argument that any actions were taken against him because of his brain tumor or PTSD or that the reasons given by Defendant are pretextual.

Further, Plaintiff's claims about being discriminated against based on his disability by not being paid all of his FMLA leave are unfounded.  The undisputed facts show that his pay was adjusted once the required FMLA documentation was received, and any delay in payment appears to be due to his own delay in submitting the documentation. (Def.'s Mot., Statement of Material Facts ¶¶ 29, 47, 50-59.)  Plaintiff was not denied any FMLA leave for which he submitted appropriate documentation, except for time that he had exhausted all of his sick leave.  Further, there is no evidence to suggest that the FMLA Department processed his requests for paid leave in a discriminatory manner because of a disability.

Finally, Plaintiff also has not addressed another fatal flaw in his claims:  he was provided reasonable accommodations in order to permit him to perform his job.  During the time that he was on leave, his physicians ordered that he was not able to perform

his job.  Accordingly, no accommodation was needed, or possible, for that period of time.  Further, Plaintiff has not shown that there was a reasonable accommodation other than paid leave during this time period.  *See Woodman*, 132 F.3d at 1344. Further, Plaintiff made no requests for accommodation other than a reassignment, which was given to him when he came back.  Accordingly, his disability claim fails because he has not shown that he was denied reasonable accommodations.

### 3.    Plaintiff Has Not Shown a Claim Of Hostile Work Environment

As to the hostile work environment, Plaintiff admits that this claim involves Woods yelling and screaming at him "on at least seven or eight occasions," giving him little notice if he had to work his days off (which he claims occurred frequently) and giving that notice to him by e-mail (as opposed to in person), telling him he could not take an hour of leave that she had previously approved on one occasion, and that Woods was a "witch."  He testified that the reason Woods yelled and screamed at him was "[b]ecause she could and the Postmaster was on her back all the time."

I first find that Plaintiff's hostile work environment claim fails because he is not disabled as defined in the Act, as discussed in Section II.B.2.b, *supra*.  *See Lanman v. Johnson County*, 393 F.3d 1151, 1158 (10th Cir. 2004) ("Establishing a disability within the meaning of the act is a threshold requirement for all ADA claims" including hostile work environment).  Second, I find that Plaintiff's facts fall far short of creating a hostile work environment.

In order to survive summary judgment on a claim of hostile work environment, Plaintiff must set forth evidence to show that "a rational jury could find that the work

place is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and that he was targeted for harassment because of his disability. *Trujillo v. Heurfano County Bd. of Comm'rs*, No. 08-1486, 2009 WL 3336123, at *10 (10th Cir. 2009) (quoting *Sandoval v. City of Boulder*, 388 F.3d 1312, 1326-27 (10th Cir. 2004)). In making this determination, the court must "consider the work environment 'both objectively and subjectively, . . . look[ing] at all the circumstances from the perspective of a reasonable person in the plaintiff's position.'" *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007). Factors that may be considered "include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 22-23 (1993).

I find that Plaintiff's claims about the treatment to which Woods subjected him do not meet the threshold for a hostile work environment. First, Plaintiff has not presented any evidence regarding the frequency of the alleged discriminatory conduct. For example, while Plaintiff states that Woods yelled at him seven or eight times, he does not state over what time period this occurred nor does he detail what was said for the Court to assess the severity of her conduct. Plaintiff has also not shown that any of the acts complained of were physically threatening or humiliating, or that the acts unreasonably interfered with his work performance. As a matter of law, I find that no rational jury could find the existence of a hostile work environment in this case. *See*,

*e.g*, *Nettle v. Central Okla. Am. Indian Health Council, Inc.*, No. 08-6023, 2009 WL 1877433, at *7-10 (10th Cir. July 1, 2009) (finding that stray racial comments are not sufficient to show hostile work environment, that a hostile work environment entails a "'steady barrage of opprobrious [] comments'" and that "Title VII's standard for redress is a *hostile* work environment, not an unpleasant one.") (quotation omitted); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997) ("unpleasant and boorish behavior does not create a hostile work environment").  Plaintiff has also presented not evidence that he was targeted for hostile treatment because of his disability.

### 4.    Plaintiff's Assertions That Are Unrelated to His Claims

Finally, I note that Plaintiff's factual assertions that are unrelated to his claim of disability are disregarded.  This case is a disability discrimination case only.  In Plaintiff's response, he makes irrelevant and unsupported assertions that white females were treated differently than he was and that black employees were unfavorably treated. There are no facts to show that the white females did not have a disability and that they were treated differently from Plaintiff because he had a disability and they did not.  Nor are there any facts about the alleged "injuries" the black employees had. Further, there are no claims in the Complaint regarding race, color, or sex discrimination.

## III.    CONCLUSION

Based upon the foregoing, it is

ORDERED that Defendant's Motion for Summary Judgment is **GRANTED**. Judgment shall be entered in favor of Defendant and against Plaintiff on all claims.  In light of this ruling, it is

ORDERED that the final trial preparation conference set for September 28, 2010, at 3:00 p.m. and the jury trial set to commence on Monday, October 18, 2010, are **VACATED**.

Dated:  July 29, 2010

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge